**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 21st day of June, 2023.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

**JOSEPH L. FREY** and
**ERIN B. FREY**,

                        Case No. 19-20862

        Debtors.

**JOSEPH FORD** and
**BRANDY FORD**,

                        Adv. Case No. 19-06039

        Plaintiffs,

        v.

**JOSEPH L. FREY** and
**JOE'S CABINET SHOP**,

        Defendants.

## OPINION AND ORDER

        Plaintiffs Joseph and Brandy Ford obtained a default judgment in Missouri

against debtor/defendant Joseph Frey for quiet title, slander of title and breach of

contract in 2019. Frey filed for bankruptcy shortly thereafter. In this adversary proceeding, the Fords seek a determination that their claims against Frey are excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6).[1] The Court conducted a trial on November 4, 2022, and will now enter judgment for Frey.[2]

I.  **Findings of Fact**

Buying and selling a home is one of the most stressful events for a couple.[3] Building a home is no different. This case exemplifies that truth. Sometime in 2017, the Fords approached Frey, a cabinet maker and contractor doing business as Joe's Cabinet Shop and Real Estate Renovations, LLC,[4] to make and install cabinets in their new-build home.

The Fords visited Frey's shop on November 17, 2017. Because the Fords' home was in the early stages of construction at the time, the parties entered into an open-ended contract. The Fords selected two sets of cabinets from Frey's existing, pre-assembled inventory—one set was white, the other brown. The contract for

---

[1] All future statutory references are to Title 11 of the United States Code, unless otherwise provided.
[2] Kurt S. Brack appeared for the plaintiffs; Joseph L. Frey appeared *pro se*. The Court has jurisdiction over this nondischargeability action as a core proceeding arising under title 11. 28 U.S.C. §§ 1334(b) and 157(A), (I).
[3] *More than a Third of Americans Cry While Selling Their Home*, ZILLOW (June 24, 2019), https://zillow.mediaroom.com/2019-06-24-More-than-a-Third-of-Americans-Cry-While-Selling-Their-Home (detailing survey results that the home buying and selling process "is one of the most stressful experiences in modern life, second only to a relationship break-up.").
[4] Joseph Frey operates his cabinet business as a sole proprietor with d/b/a names of Joe's Cabinet Shop and Real Estate Renovations, LLC, although neither are the name of an LLC as a legal entity.

purchase specified that Frey would hold "brown stain cabinets in shop and custom premier cabinets in shop." The Fords put $5,000 down.[5]

By December 2017, the Fords were ready to design the kitchen down to the specific cabinet details. The parties created a new contract on December 29, 2017, that provided the specific details of the determined design for a total price of $19,165. The contract provided:

> Build additional custom cabinets to match existing in shop. Also modify existing for drawers. The cabinets will be built according to design plan. All with hardwood box construction and face frames to be Maple or Poplar. All door hinges and drawer glides will be soft close. Knobs, pulls, applique, corbels, trim/crown and other decorative items are extra and will be determined upon selection. Build custom seating for the kitchen island. The cabinets surrounding the seating will have glass insert panels.[6]

The parties did not establish a clear timeline for the cabinet installation. As of January 4, 2018, the Fords had paid $10,100 to Frey under the contract.

To finance their new-build home, the Fords had a construction loan that set out progress and inspection deadlines. The loan required the Fords to have a complete working kitchen prior to a required inspection in the spring of 2018. Both Fords testified that they communicated the timeframe to Frey; Frey testified that they had never done so. No version of the parties' written contract provides any such deadline.

Although the Fords believed the cabinets were to be installed two weeks prior to the inspection, Frey, unaware of the required date, delivered the cabinets only

---

[5] Ex. 1.
[6] Ex. 2 at 1.

3

one day in advance.[7] He did not deliver the full order—cabinets were missing doors, shelving, crown molding, and hardware that would be added during installation. Prior to beginning installation, Frey requested final payment for his services from Joseph, who was at the house. Joseph informed Frey that Brandy was at the shop with her checkbook and would pay there. But Brandy did not pay while she was at the shop. The subsequent events are unclear, but the result is not—Frey left the project and never returned to complete the cabinets' installation.

In May 2018, Frey filed a mechanic's lien against the Fords' home in Missouri pursuant to MO. REV. STAT. § 429.10 (2022 Supp.) for "nonpayment of . . . brown kitchen, miscellaneous doors with bead board and 4 others, blue distressed cabinet, cabinet to match wine rack, tie rack, old arch window frames, shoe racks, fisher brown pantry." He listed $7,530 outstanding of a total claim of $17,230, crediting $9,700 of payment.[8] In filing his lien, Frey did not comply with the statutory requirement to provide notice in contractual documents and paperwork. Frey did try to warn the Fords that he was going to file a lien by sending a certified letter, but the letter was returned unclaimed. Additionally, Frey never filed a petition to foreclose the lien. He was "under the assumption that . . . if they ever sold their house or something" that he would be paid. Frey's testimony established that he did

---

[7] The first inspection deadline was extended after Brandy requested it, because Frey was not going to complete the work on time.
[8] This amount does not match the amount on the contract. However, it is less than what Frey was owed in full.

4

not understand the legal requirements involved in filing a mechanic's lien and was simply trying to collect on outstanding sums owed.

The Fords first learned of the mechanic's lien from their bank on the day that they were going to close on a purchase-money mortgage to finalize their home purchase and pay off the construction loan. As a result of the mechanic's lien, they had to borrow 1.5 times the lien amount to escrow with the title company. Upon learning about the mechanic's lien, the Fords asked Frey several times to release it. Frey neither responded to their requests nor released the lien.

In December 2018, the Fords filed an action against Frey in Johnson County, Missouri, asserting claims for quiet title, slander of title and breach of contract.[9] The Missouri court entered default judgment in favor of the Fords in March 2019. The Missouri judgment determined that: (1) Frey's mechanic's lien was void and he had no right or interest in the Fords' property; (2) Frey slandered the Fords' title in filing the mechanic's lien, for which the Fords were awarded $15,000 in damages, plus costs; and (3) Frey breached the parties' contract, for which the Fords were awarded $9,700 plus interest.[10] After receiving a copy of the Missouri judgment, the title company released the escrowed funds.

Frey filed for bankruptcy on April 30, 2019. The Fords then commenced this adversary proceeding seeking a determination of the nondischargeability of the Missouri judgment including damages totaling $26,700 plus court costs. Prior to

---

[9] Ex. 8 at 1.
[10] *Id.* at 2.

5

trial, the Fords moved for summary judgment, arguing that the Missouri judgment should be given collateral estoppel effect in this proceeding. This Court denied that motion,[11] and the matter went to an evidentiary hearing, after which the Court took it under advisement.

## II. Analysis

The Fords have the burden of proving, by a preponderance of the evidence, that Frey's debt to them is excepted from discharge under § 523(a).[12] Because bankruptcy seeks to provide debtors with a fresh start, exceptions to discharge are strictly construed in favor of debtors and against objecting creditors.[13]

Here, the Fords advance three separate bases for nondischargeability under § 523(a): false pretenses or fraudulent misrepresentation under subsection (a)(2)(A), larceny under subsection (a)(4), and willful and malicious injury under subsection (a)(6).[14] As part of their argument, the Fords rely upon the Missouri judgment. But, as this Court has previously stated, that judgment is not entitled to collateral estoppel effect in this proceeding, because it was not a judgment on the merits.[15]

---

[11] ECF 51.
[12] *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).
[13] *First Nat'l Bank of Omaha v. O'Brien (In re O'Brien)*, 555 B.R. 771, 779 (Bankr. D. Kan. 2016) (citing *Kan. State Bank and Trust Co. v. Vickers (In re Vickers)*, 577 F.2d 683, 687 (10th Cir. 1978)).
[14] At trial, the Fords' counsel attempted to establish each cause of action by asking both Fords whether each element was met. The Court pays no heed to these bare assertions and conclusions of law, as it is not for the parties to determine but, rather, for the Court.
[15] ECF 51.

6

**Section 523(a)(2)(A) - False Pretenses or Fraudulent Misrepresentation**

Section 523(a)(2)(A) is a "tailored remedy"[16] providing that a debtor cannot discharge a debt of "money . . . obtained by false pretense [or] false representations." To succeed on this claim, a creditor must show that a debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor justifiably relied on the representation; and the debtor's representation caused the creditor to suffer a loss as a result.[17] Section 523(a)(2) has two main purposes: "to prevent a debtor from retaining property the debtor fraudulently obtained and to ensure that bankruptcy relief is not available to dishonest debtors.[18]

The Frey's claim under § 523(a)(2)(A) alleges that Frey knowingly made two false representations: (1) that he would complete the work specified in the required timeframe, and (2) that the Fords owed him $7,530 (i.e., the mechanic's lien). As to the mechanic's lien, the Ford's fail to state a claim under (a)(2)(A). By the Fords' own accounts, Frey's mechanic's lien was unsuccessful in that he never obtained any money as a result of filing the mechanic's lien. As such, the Court's analysis will

---

[16] *Husky In'tl Elecs., Inc., v. Ritz*, 578 U.S. 356, 364 (2016).
[17] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996). *Young* provides for reasonable reliance; however, the Supreme Court's decision in *Field v. Mans* lowered that requirement to justifiable reliance. *See* 516 U.S. 59, 72–75 (1995); *Kan. Dep't of Labor v. Larson (In re Larson)*, No. 21-10198, Adv. No. 21-5014, 2022 WL 1073699, at *5 (Bankr. D. Kan. April 8, 2022) (discussing the application of *Field* to the *Young* test).
[18] *Moyer v. Guitton-Belon (In re Guitton-Belon)*, No. 22-4003, 2022 WL 17366026 at *10 (W.D. Mo. Dec. 1, 2022).

7

focus on the first alleged misrepresentation that Frey would complete the work in the required timeframe.

*False Representations*

The Court's first inquiry is whether Frey made a false representation. A debtor makes a false representation by "making a false oral or written assertion, engaging conduct 'that amounts to an assertion not in accordance with the truth,' or remaining silent regarding a material fact."[19] A mere breach of contract does not amount to a false representation.[20] A failure to perform is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach.[21] In the context of contracts, a court evaluates the truth of the representation at the time the statement was made, because intervening events may cause a debtor's future actions to deviate from prior intent.[22]

The Fords did not prove that there was ever a contracted-for deadline, and even if there was one, Frey's failure to meet it would establish nothing more than breach of contract—which standing alone, does not establish "misrepresentation" under the meaning of § 523(a)(2)(A).

---

[19] *Id.*

[20] A failure to preform may be a false representation, *if* a debtor had no intention of performing any contractual obligation. *Carlson v. Carlson (In re Carlson)*, No. 06-8158, 2008 WL 8677441, at *3 (10th Cir. Jan. 23, 2008); *First Baptist Church v. Maurer (in re Maurer)*, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990) (citing *Seepes v. Schwartz (In re Schwartz)*, 45 B.R. 354 (S.D.N.Y. 1985)).

[21] 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d](Richard Levin & Henry J. Sommer eds., 16th ed.).

[22] *Goldberg Sec., Inc., v. Scarlata (In re Scarlata)*, 979 F.2d 521, 525 (7th Cir. 1992).

8

*Intent to Deceive*

The Court next considers whether Frey intended to deceive the Fords. A debtor's intent to deceive can be inferred from the totality of the circumstances or from debtor's knowingly false statement.[23] But, a breach of contract is not sufficient evidence of a false representation made with the intent to deceive.[24] A failure to perform may be a false representation, *if* a debtor had no intention of performing any contractual obligation.[25] However, a failure to perform, without more, is not sufficient to render a debt nondischargeable, even if there is no excuse for the subsequent breach.[26] In the contract context, a court evaluates the truth of the representation at the time the statement was made, because intervening events may cause a debtor's future actions to deviate from prior intent;[27] a court may find an intent to deceive from debtor's failure to take any steps to perform under the contract.[28]

The evidence establishes that Frey did not possess the intent to deceive the Fords, in part, because there was never a contracted-for timeline that Frey could intentionally deceive the Fords about completing, and in part because Frey intended to complete the required work at the outset. He met with the Fords on multiple

---

[23] *Id; In re O'Brien*, 55 B.R. 771, 780 (Bankr. D. Kan. 2016).
[24] A court will find an intent to deceive from debtor's failure to take any steps to perform under the contract. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d].
[25] *In re Carlson*, 2008 WL 8677441, at *3 ; *in re Maurer*, 112 B.R. at 713 (citing *In re Schwartz*, 45 B.R. 354).
[26] 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] (Richard Levin & Henry J. Sommer eds., 16th ed.)
[27] *See in re Scarlata*, 979 F.2d at 525.
[28] *See* 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d].

9

occasions at different points in the construction build. He spent significant time working with the Fords to draft a layout that met the Fords' needs. And he started to perform under the contract when he delivered the cabinets and began installation. The subsequent breakdown in the relationship was an intervening event. The evidence establishes that Frey entered into the contract in good faith, intended to complete the specified work, and that he lacked an intent to deceive. Where inconsistent with the Fords' testimony, the Court finds Frey's testimony the more reliable and believable.

*Justifiable Reliance*

The Court next must determine whether the Fords justifiably relied on Frey's alleged misrepresentations. Whether a creditor justifiably relied on a debtor's statement is a subjective test that requires courts to "examine 'the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than [applying] a community standard of conduct to all cases.'"[29]

Here, the Court finds that the Fords justifiably relied upon Frey's statement that he would complete the work but finds that those statements were accurate. The Fords sought Frey as a professional cabinet maker as they went through their home building process and trusted that he would execute their vision. But, justifiable reliance on truthful statements cannot successfully establish a claim under (a)(2)(A). Here, the Fords justifiably relied upon Frey's well-intentioned

---

[29] *Johsnon v. Riebesell (In re Riebesell)*, 586 F.3d 782, 792 (10th Cir. 2009) (quoting *Field v. Mans*, 516 U.S. 59, 76 (1995)).

statements that he would complete the scope of work that he believed was discussed, and they justifiably relied upon the well-intentioned statements that the Fords owed him money.

*Loss*

Finally, turning to loss, the Fords fail to establish any actual, pecuniary loss; the Fords paid another cabinet company $7,000 to complete the project,[30] which is less than the sum owed to Frey under the contract to complete the work.[31] To the extent that Ford did not complete the contracted-for work, the Fords allege a breach of contract claim, which cannot serve as the basis for nondischargeability of debt. And, as to the mechanic's lien, the Fords received the one and a half times the lien amount they were required to escrow after the completion of the quiet title action in state court. The Fords' decision to retain those funds and not pay down the mortgage that additional amount was their decision.

**Section 523(a)(4) - Larceny**

A debt resulting from larceny is nondischargeable under § 523(a)(4). Larceny is the "'[t]he unlawful taking and carrying away of someone else's personal property with the intent to deprive the possessor of it permanently.'"[32] In other words, there is no unlawful taking where the initial possession is lawful.[33] Here, the Fords have

---

[30] ECF 76 at 93, L 9–23.
[31] The final contract provided for a total of $19,165, and the Fords had paid $10,100 under the contract, leaving an outstanding balance of $9,065.
[32] *J & M Constr. v. Musgrave (In re Musgrave)*, B.A.P. No. CO-10-049, 2011 WL 312883, at *5 (B.A.P. 10th Cir. Feb. 2, 2011) (Somers, J.) (quoting Black's Law Dictionary 885 (7th ed.1999)).
[33] *Gaehmi v. Ghaemi (In re Ghaemi)*, 429 B.R. 321, 325 (Bankr. D. Colo. 2013).

11

not established larceny because Frey lawfully obtained the funds that the Fords paid to him.

**Section 523(a)(6) - Willful and Malicious Injury**

Section 523(a)(6) excludes intentional torts from being discharged in bankruptcy;[34] specifically, § 523(a)(6) prevents a debtor from discharging debts resulting from a "willful and malicious injury by the debtor," which can include injury to property rights.[35] This Court treats "willful and malicious" as distinct elements, which facilitates a more rigorous examination.[36] A creditor must prove both a willful act and a malicious injury.[37] The "willful" prong requires an "intentional injury," not merely a deliberate or intentional act that leads to an injury."[38] And similarly, the "malicious" prong requires a debtor acted with a culpable state of mind vis-à-vis the actual injury (i.e., he consciously disregarded the required duties such that his act was wrongful and without just cause).[39] It is a high bar to meet the intent required by both prongs—recklessness or negligence will not suffice for either prong.[40]

---

[34] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998).
[35] 4 COLLIER ON BANKRUPTCY ¶ 523.12[4].
[36] *See Lavielle v. Acosta (In re Acosta)*, No. 22-05015, 2023 Bankr. LEXIS 89, at*8 (Bankr. D. Kan. Jan. 11, 2023) (citing *Swan Pediatric Dental, LLC v. Hulse (In re Hulse)*, No. 21-200084, Adv. No. 21-02038, 2022 WL 16826561, at *7 (B.A.P. 10th Cir. 2020) (Somers, J.)).
[37] *Panalis v. Moore (In re Moore)*, 357 B.R. 1125, 1129 (10th Cir. 2004).
[38] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 911 (B.A.P. 10th Cir. 2020) (Somers, J.).
[39] *Id.*
[40] *Id.*

12

The Fords argue that Frey willfully and maliciously injured their property interest in two ways. First, that Frey discontinued cabinet installation, which required them to pay a third party an additional $7,000 to complete the work. Second, that Frey filed the mechanic's lien, which required them to escrow 1.5 times the amount of the lien to refinance their home. The Court is not convinced by either argument.

The Fords' first argument, that Frey willfully and maliciously discontinued the cabinet installation, fails because it is, at most, a claim for breach of contract, which standing alone is not a sufficient basis for nondischargeability under § 523(a)(6).[41]

The Fords' second argument, that Frey willfully and maliciously filed the mechanic's lien, fails because the Fords did not establish that Frey intended to cause them injury—at most, they showed that he acted with reckless disregard. Without a showing of intent, the Fords fail to satisfy both the willful and malicious prongs. Certainly, Frey intentionally filed the mechanic's lien, but intent, within the meaning of § 523(a)(6), requires more than the mere knowledge that legal rights are being violated.[42] Rather, it requires an intentional injury, and Frey did not intend for the Fords to escrow 1.5 times the lien amount to convert their construction loan. Frey's intention was a good faith effort to collect what he believed was an outstanding debt owed by the Fords to him. Mechanics liens are filed under

---

[41] *Geiger*, 523 U.S. at 62.
[42] *See Smith*, 618 B.R. at 913, n. 67 (quoting *Steier v. Best (In re Best)*, 109 Fed. App'x 1, 6 (6th Cir. 2004)).

Missouri state law as a mechanism to collect past-due debt. Frey did not act with the requisite intention to inflict the injury complained of by the Fords. Frey's testimony is that he filed the lien intending that he would eventually obtain the outstanding balance. Nevertheless, did Frey act recklessly? Perhaps. He likely should have known there would be harmful consequences for filing and refusing to release the mechanic's lien (e.g., it seems Frey had at least *some* knowledge that there was financing in place for the home construction, and the Fords' counsel had sent him a demand letter requesting he release the lien). Regardless, even if Frey's actions were reckless, they do not rise to the level of intent required by both prongs of the § 523(a)(6) test.

### III. Conclusion

Because the Fords failed to carry their burden of proof, they are not entitled to judgment under §§ 523(a)(2)(A), (a)(4), or (a)(6). The Court will enter judgment for Frey in this adversary proceeding finding that the Fords' claim against Frey is not excepted from discharge under § 523(a).

IT IS SO ORDERED.